GABRIEL DANIEL MORRISON
MITCHELL,

        Petitioner,

v.

                                       Civil No. 4:14cv4
                                   Criminal No. 4:12cr10

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND ORDER

This matter is before the Court on Gabriel Daniel Morrison

Mitchell's ("Petitioner") Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 198.

Petitioner's § 2255 motion, which was filed with the assistance

of counsel, advances four claims, all alleging ineffective

assistance of trial counsel. Id. Petitioner has also filed

numerous pro se motions seeking to amend or supplement his

§ 2255 motion. In response, the Government argues that

Petitioner's original § 2255 claims lack merit, and that his pro

se attempts to amend his § 2255 motion are both untimely and

improper. For the reasons set forth below, the claims in

Petitioner's original § 2255 motion, his associated motions to

supplement/amend, and his reply briefs or motions filed under

alternative headings are all **DISMISSED and/or DENIED** on the merits.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January of 2012, Petitioner and two co-conspirators committed an armed robbery and carjacking, resulting in the theft of several appliances from a delivery truck of a Sears contractor. On February 8, 2012, a federal grand jury returned a multi-count indictment charging Petitioner and co-defendant Antonio McGhee ("McGhee") with three felony counts. ECF No. 1. On April 5, 2012, a grand jury returned a multi-count superseding indictment that added a fourth Count, and added a new co-defendant, Travis Williams ("Williams"). ECF No. 23. Following Williams' plea of guilty to two of the four felony charges, a second superseding indictment was returned charging Petitioner and McGhee with the same four counts as the first superseding indictment. ECF No. 64.

Petitioner pled not guilty to the charges and proceeded to a joint jury trial with co-defendant McGhee. At trial, the evidence revealed that Anthony Wilson ("Wilson"), the delivery truck driver, was carjacked by two men. Unbeknownst to Wilson,

---

[1] Petitioner has also filed a letter-motion seeking to rescind his restitution order and a motion for bail pending resolution of his § 2255 motion. ECF Nos. 237-38. While Petitioner's § 2255 motion addresses restitution, his recently-filed letter motion appears largely unrelated as it only addresses Petitioner's current ability to pay restitution in light of his incarceration. ECF No. 237. Such separate restitution motion will therefore be addressed by separate order. In contrast, Petitioner's motion seeking bail, ECF No. 238, will be addressed herein.

his delivery helper, Travis Williams, had participated in arranging the carjacking. Having received inside information from Williams, the two carjackers appeared at an appliance delivery location, displayed a firearm, bound Wilson and Williams (who was pretending to be a victim), and later off-loaded the appliances.

At the conclusion of the jury trial, the jury returned a verdict of Guilty as to all four counts charged against Petitioner. ECF No. 90. On August 23, 2013, Petitioner was sentenced to a total of 260 months imprisonment, consisting of 200 months on the robbery counts and 60 months consecutive based on the use of a firearm in furtherance of the robbery. Petitioner timely appealed his conviction, and the Fourth Circuit affirmed. ECF No. 180. Petitioner thereafter filed a petition for writ of certiorari, and on January 12, 2015, the United States Supreme Court denied such petition. Mitchell v. United States, 135 S. Ct. 1018 (2015).

Petitioner, with the assistance of counsel, timely filed his § 2255 motion on January 12, 2016. ECF No. 198. Prior to the Government filing its Rule 5 Answer, Petitioner purported to file three pro se § 2255 supplements. ECF Nos. 202/203, 206/209, 207/208.[2] Notably, notwithstanding the fact that

---

[2] On more than one occasion, Petitioner has filed numerous copies of the same motion/document.

Petitioner was represented by counsel, each of these supplements was filed pro se and each was filed more than one-year after Petitioner's conviction and sentence became final. See United States v. Segers, 271 F.3d 181, 186 (4th Cir. 2001) ("[T]he judgment of conviction of a prisoner who has petitioned for certiorari becomes final . . . when the Supreme Court denies certiorari after a prisoner's direct appeal.").

The Government thereafter filed a response in opposition to all four of the timely claims contained in Petitioner's original § 2255 motion. ECF No. 210. Approximately one month later, Petitioner submitted an unsigned pro se reply brief to the Court. ECF No. 212. The unsigned pro se brief was followed up by a reply brief submitted by Petitioner's counsel; however, the Court returned such brief to habeas counsel based on the Clerk's Office's discovery that Petitioner's retained habeas counsel was not licensed to practice in this District. ECF No. 215. Subsequent to the Clerk's Office notifying habeas counsel on multiple occasions that he was not licensed to practice in this Court, id., the Court issued a "Show Cause" Order requiring habeas counsel to demonstrate why the entire § 2255 case should not be stricken based on counsel's failure to associate with licensed local counsel. ECF No. 217. Petitioner's habeas counsel thereafter associated with local counsel, the Court allowed the § 2255 case to proceed, ECF No. 221, and licensed

4

local counsel filed the operative "reply brief" to the initial
§ 2255 petition, ECF No. 224.

During the interim, although this Court had substantial
reservations about the propriety of the facially untimely pro se
amendments/supplements filed in this case, the Court ordered a
supplemental response from the Government, in part because one
of Petitioner's filings sought to raise a claim under Johnson v.
United States, 135 S. Ct. 2551 (2015), ECF No. 216, a claim that
was potentially subject to a different limitations period. The
Government filed a supplemental response, ECF No. 231, and
Petitioner submitted a reply brief, although again, such brief
was submitted pro se, ECF No. 232/235. Petitioner, without
leave of Court, or the assistance of counsel, subsequently
submitted two additional motions for leave to supplement his
§ 2255 motion. ECF Nos. 233/236, 239. Again, out of an
abundance of caution, the Government was instructed to submit a
supplemental response, ECF No. 240, and on September 18, 2017,
such response was filed. ECF No. 244. On October 5, 2017,
counsel for Petitioner filed a reply to the Government's
September 2017 response. This matter is therefore now ripe for
review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his
sentence or conviction by moving the district court "to vacate,

set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id.; see Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack his sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal.[3] United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). With limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The "higher hurdle" applies because, once a Petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65.

---

[3] The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

6

A § 2255 petitioner need not, however, overcome such "higher hurdle" to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance caused the petitioner prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Satisfying the first prong of Strickland requires a petitioner to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." Id. at 694. If a petitioner fails to prove either of the two prongs of the Strickland test, a district court need not evaluate the other prong. Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013).

The prejudice prong of the Strickland test is slightly modified when a petitioner challenges trial counsel's handling of plea negotiations; in such circumstances petitioners must typically "demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . .'" Merzbacher v. Shearin, 706 F.3d 356, 366 (4th Cir. 2013) (quoting Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012)); see Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Congress and the President have established a one-year limitations period within which a petitioner must file a § 2255 motion. 28 U.S.C. § 2255(f). The one-year limitations period begins running on the latest of four dates: (1) the "date on which the judgment of conviction becomes final"; (2) the date on which certain government-created impediments to filing are removed; (3) the date on which a new right has been recognized

8

by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which facts supporting the claim could be discovered through due diligence.  Id. (emphasis added).

### III. DISCUSSION - ORIGINAL § 2255

Petitioner's original § 2255 motion advances the following four claims, all of which assert that trial counsel provided ineffective assistance: (1) failure to advise Petitioner of the benefits of pleading guilty; (2) failure to investigate; (3) failure to object to jury instructions; and (4) failure to contest restitution.  Because Petitioner's § 2255 motion was filed exactly one-year after the Supreme Court denied certiorari, the Government does not contest the timeliness of such motion as it was filed within one year of the "date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f); see Segers, 271 F.3d at 186.

### A.  Failure to Advise of Benefits of Pleading Guilty

Petitioner asserts that his trial counsel was ineffective for failing to inform Petitioner of the benefits of pleading guilty, failing to inform Petitioner of the statutory maximum punishments, and failing to explore the possibility of a negotiated plea with the Government.  In support of such allegations, Petitioner submits an affidavit asserting that, upon asking his lawyer what the "maximum sentence would be" if

9

Petitioner was "convicted of the charged offenses," trial counsel indicated that "he did not know what the maximum sentence might be." ECF No. 199-1, at 2.[4] Additionally, Petitioner states in his sworn affidavit that "[k]nowing how serious the charges in this case were," he asked his lawyer to "explore the possibility of a guilty plea" with the Government, but that trial counsel "never responded" to such inquiry, and as far as Petitioner knows, counsel never explored such possibility. Id. In his reply brief, which was submitted by habeas counsel and does not include a sworn affirmation from Petitioner, Petitioner asserts that had he known that he faced up to twenty years on the robbery charge and a consecutive sentence on the gun charge, and had he known that he could plead guilty and receive a Guideline reduction for acceptance of responsibility, he "would have ple[d] guilty long before a

---

[4] While it is not material to the resolution of this motion, the parties disagree as to whether the Court informed Petitioner of the maximum statutory punishments at Petitioner's initial appearance and/or arraignment hearings. Petitioner appears correct that the maximum statutory punishments were not stated by the Court at any of these preliminary hearings (Petitioner had counsel at each of his three arraignment hearings and a formal reading of the indictment was waived). However, at each arraignment, Petitioner confirmed on the record that he discussed the respective indictment with his lawyer, that Petitioner understood the charges against him, and that he wished to proceed to trial by jury. Additionally, at Petitioner's initial appearance, which occurred before counsel was appointed, the Magistrate Judge reviewed the charges with Petitioner and informed him that, if convicted, he could be ordered to serve extended terms in the penitentiary. For the reasons discussed below, even assuming that Petitioner lacked clarity as to the precise maximum sentence that he was facing, he fails to demonstrate a reasonable probability of a different outcome had he possessed such information.

10

trial."[5] ECF No. 224, at 2. In response to such allegations, defense counsel submitted an affidavit stating as follows:

> I met with [Mr. Mitchell] 8-10 times prior to trial to prepare the case. <u>From day one he always told me he was not guilty</u> and was <u>never interested</u> in any plea. <u>I certainly let him know how much time he could get if he took the case to trial</u>, but he was adamant he did not do anything wrong and we MUST try the case.

ECF No. 210-1 ¶ 4 (emphasis added).

Were the Court left with only such diverging sworn statements, it might conclude that an evidentiary hearing was necessary in order to avoid making credibility determinations on the papers. However, as discussed below, there is ample evidence in the record, including transcripts from hearings held before the undersigned judge, to demonstrate that Petitioner's post-conviction self-serving statements that he would have pled guilty are not credible and fail to warrant relief under § 2255.

### 1. Prejudice

In the context of a foregone guilty plea, a petitioner can demonstrate <u>Strickland</u> prejudice by showing that there is a reasonable probability that, but for counsel's alleged failures in handling the plea process, the petitioner <u>would have</u> either

---

[5] The Court notes the obvious internal conflict in Petitioner's sworn assertion that he <u>knew how serious the charges against him were</u>, and his assertion that he would have pled guilty if he had known how much time he could theoretically receive if convicted of all charges. The Court further recognizes that both the reply brief submitted by Petitioner's habeas counsel and an earlier <u>pro</u> <u>se</u> filing submitted by Petitioner purport to be submitted "under the penalty of perjury"; however, neither document contains Petitioner's signature. ECF Nos. 208, 224.

succeeded in securing a plea deal from the Government, or pled guilty "straight up" to all of the charges without a plea agreement. See Merzbacher, 706 F.3d at 366. Although such legal test "focuses the inquiry on a subjective question, the answer to that question must be reached through an objective analysis." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "Objective factors relevant to the prejudice analysis" include: (a) "the potential strength of the government's case"; (b) "the disparity between the government's plea offer and a petitioner's sentencing exposure if convicted at trial"; and (c) a petitioner's "repeated protestations of innocence throughout trial." Wolford v. United States, 722 F. Supp. 2d 664, 691 (E.D. Va. 2010) (internal citations and quotation marks omitted). While it appears to remain unresolved in this Circuit whether a petitioner can establish prejudice solely through his own testimony about his plea decision, or whether independent objective evidence must also be presented, the Fourth Circuit has recognized that a petitioner's post-hoc and "self serving assertion that he would have accepted the plea is, as both the state and federal courts recognized, the type of testimony . . . subject to heavy skepticism." Merzbacher, 706 F.3d at 366-67 (citations and quotation marks omitted) (omission in original); see Hooper, 845 F.2d at 475 ("[W]e do not put great weight in [the defendant's] representation that if, prior to accepting the

12

plea bargain, he had received a psychiatric report . . . he would have chosen to go to trial" because "[a]lthough it carries some probative value, such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision.").

a.

The Court first turns to the relevant objective factors that inform the analysis of whether there is a reasonable probability that, but for counsel's alleged failures in handling the plea process, Petitioner would have either succeeded in securing a plea deal from the Government, or pled guilty "straight up" to all of the charges without a plea agreement. If the Government has a relatively weak case, and/or if the defense has a viable trial strategy with a reasonable probability of securing an acquittal to all charges, common sense suggests that a defendant would not normally plead "straight up" or accept anything other than a very favorable plea deal. Here, the relative strength of the Government's case, as compared to the viability of the Petitioner's trial defense, lends little support to Petitioner's § 2255 motion because the Petitioner's trial defense—that the victim of the carjacking/robbery was actually a willing conspirator who helped stage the robbery to avoid detection from his boss—was a viable

and complete defense to all of the felony charges in this case. In fact, Petitioner's trial counsel, who is a very experienced defense attorney, previously characterized such defense as having "about a 50/50 chance" of securing an acquittal. Hearing Tr. 44, ECF No. 247. The fact that Petitioner's co-defendant also proceeded to trial on the same defense theory further underscores the viability of the defense strategy in this case.

b.

Considering the sentencing exposure and risk/benefit of proceeding to trial, Petitioner's post-hoc contention that he would have pled guilty "straight up" to all of the charges had he only known how much imprisonment he was facing suffers from multiple flaws. First, Petitioner asserts in his affidavit in support of his § 2255 motion that his pretrial actions were taken "[k]nowing how serious the charges in this case were." ECF No. 199-1. Such statement obviously conflicts with Petitioner's current claim that he lacked knowledge of the seriousness of the charged offenses.

Second, there appears to have been a very minimal forgone benefit associated with proceeding to trial as compared to entering a guilty plea, regardless of whether Petitioner pled guilty "straight up" to all of the charges, or entered into a hypothetical plea agreement similar to the plea deal entered into by Petitioner's co-defendant Travis Williams. Such minimal

14

benefit, which is outlined below, must be weighed against the realistic possibility that Petitioner would be acquitted on all charges and face no federal prison time.

Petitioner's post-hoc statements contend that Petitioner's plea decision turned on the lack of knowledge that he could have received a 3-level Guideline credit for acceptance of responsibility had he pled guilty. A 3-level credit would have reduced Petitioner's advisory Guideline range from 168-210 months to 121-151 months. ECF No. 159. While, at first blush, this appears to be a not insignificant four to five year decrease in the advisory sentence, it does not take into account the sentencing exposure Petitioner faced on Count Four, the "brandishing" a firearm count that required a consecutive sentence to the sentence imposed on the other counts. Had Petitioner pled guilty (either "straight up" or with a plea agreement similar to his co-defendant's) he would have received a seven-year consecutive sentence on the brandishing a firearm charge. By proceeding to trial, Petitioner actually received a benefit as to Count Four, as the jury convicted Petitioner of the lesser-included offense of "possession" of a firearm, which carries with it a five-year mandatory consecutive sentence. Accordingly, a comparison of Petitioner's actual sentencing exposure after having proceeded to trial (168-210 months plus 60 months consecutive) with his exposure had he entered a plea of

15

guilty, (121-151 months plus 84 months consecutive) yields a difference in the total recommended sentence of only approximately two to three years. Moreover, the current record raises doubt as to whether Petitioner would have qualified for the 3-level credit for acceptance of responsibility even if he had pled guilty, in light of the fact that: (1) Petitioner intimidated a witness and received an enhancement for obstruction of justice, see U.S.S.G. § 3E1.1 App. n.4 ("Conduct resulting in an enhancement under § 3C1.1 [(Obstruction)] . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."); and (2) as discussed below, to this day, Petitioner still asserts that he is not guilty of any of the charged felony offenses because the "victim" of the robbery/carjacking was actually an accomplice in a jointly planned theft.[6]

c.

In addition to the above factors, Petitioner's repeated protestations of innocence before trial, during trial (including the adoption of his co-defendant's testimony) and post-trial,

---

[6] While there may have been a slight Guideline benefit to pleading guilty, Petitioner's "sentencing exposure" if he pled guilty would have been largely unchanged, as either a "straight-up" plea or a plea with a plea agreement that matched Petitioner's co-defendant would have subjected Petitioner to a potential sentence longer than "life" imprisonment. Critically, while Petitioner was sentenced to a lengthy term of imprisonment after having proceeded to trial, he was sentenced far below the statutory maximum punishment. It is therefore unclear how having more specific information regarding the precise maximum statutory punishment would have had any bearing on Petitioner's plea decision.

16

protestations that continue through the filing of his § 2255 motion, provide compelling evidence that undercut Petitioner's post-hoc assertion that he would have pled guilty had counsel provided additional advice on the issue. Notably, Petitioner swears in his § 2255 affidavit that, prior to trial, he informed defense counsel that no force or weapon was used during what he characterizes as a theft, and that he, and his co-conspirators that were charged in this case, met with Wilson (the victim) at a McDonald's restaurant immediately prior to the theft. ECF No. 199-1 ¶¶ 9-10.

The official transcript from multiple in-court proceedings similarly document Petitioner's consistent assertions of innocence. First, at the outset of trial, the Court made an inquiry into plea discussions, and the following exchange occurred:

> **THE COURT**: All right. Now counsel, before we get started, as you know, since the Supreme Court's decision in <u>Missouri v. Frye</u> I need to ask questions -- even though we're going to trial, I think I need to also ask the questions that I typically would ask in a guilty plea about any prior plea discussions. So Mr. Zlotnick or Mr. Samuels, have any plea offers been made by the United States in this case?
> **MR. ZLOTNICK**: There have been no plea offers made by the United States in this case, Your Honor. <u>Both defendants have indicated through their lawyers to me that they intended to proceed to trial from, at all stages.</u>
> **THE COURT**: Okay. Mr. Kimball, is that consistent with your understanding of how things have proceeded?
> **MR. KIMBALL** [*McGhee's counsel*]: Yes, Judge. In all candor, I did try to make some offer to them that they were not interested in as far as perhaps letting this case be

17

> resolved in state court on a larceny. They weren't
> interested. I did --
> **THE COURT**: You did that after talking with your client?
> **MR. KIMBALL**: Right, Judge. But there have been no plea
> offers from the government, Judge.
> **THE COURT**: Okay. Thank you, Mr. Kimball. Mr. Ellenson?
> **MR. ELLENSON[*Petitioner's counsel*]**: That is correct,
> Judge.

Trial Tr. 5-6, ECF No. 106. Second, while not a true

evidentiary hearing, this Court previously conducted a hearing

based on Petitioner's pro se submission of a premature § 2255,

which the Court construed as a motion for new counsel. At such

hearing, the Court had the following exchange with Petitioner's

trial counsel:

> **THE COURT**: What about the plea offer issue? I have my
> own recollection about that, but I'll let you make
> your own comment if you wish.
> **MR. ELLENSON**: I think it was that the government never
> offered us a plea.
> **THE COURT**: And they said based upon the fact that
> defendants always, through counsel, advised they
> intended to proceed to trial?
> **MR. ELLENSON**: Yes, sir. It was always the defendants',
> it's always my defendant's position that he was not
> guilty, and that, further, he never understood how
> Travis Williams could plead guilty to a gun charge
> when there was no gun. And I think that's still . . .
> **THE COURT**: And you discussed with him whether to seek
> a plea or try to get a plea or offer or . . .
> **MR. ELLENSON**: We discussed it. But it was a brief
> discussion in that he always maintained his innocence
> and that he wasn't going to plead guilty to something
> he didn't do.
>
> . . .
>
> **THE COURT**: Then we come to -- was there anything you
> wanted to comment on that?
> **MR. ELLENSON**: No, sir.
> **THE COURT**: About how much time he faced.

18

MR. ELLENSON: Maybe, maybe I said something to him about 20, 25 years.
THE COURT: Well, no, I -- okay. Go ahead.
MR. ELLENSON: As far as if he got found guilty of everything. And I know I said it was about a 50/50 chance at trial, and -- but I don't think we discussed that hardly at all. I think that was like one of the first couple of meetings I might have thrown that number out. But I don't think -- and I think every time after that --
THE COURT: Were you there --
MR. ELLENSON: -- <u>it was always, I really can't tell you until we get the guidelines. I really can't tell you until the case is over. And I was pretty adamant about that; that until we get the guidelines I really didn't want to give him a number</u>.
THE COURT: How about arraignment?
MR. ELLENSON: Well, I mean, I think I explained to him what the maximum punishments were, but I'm talking, I thought -- I don't think that's what he was --
THE COURT: I'm not sure, so I just thought we ought to cover it.
MR. ELLENSON: I think it was more a guesstimate for the guidelines.

Oct. 2, 2010 Hearing Tr. 40, 44-45, ECF No. 247 (emphasis added).

Consistent with the analysis in <u>Carillo-Morales v. United States</u>, 952 F. Supp. 2d 797, 807-08 (E.D. Va. 2013), this Court finds that, even accepting Petitioner's contention that defense counsel never told him the specific maximum statutory punishment and put little, if any, effort into negotiating a plea agreement with the Government:

Petitioner d[oes] not meet his burden of demonstrating a reasonable probability that he would have . . . [pled guilty] absent [defense counsel's] alleged errors. Petitioner never wavered from his position that he was innocent of the crimes for which he was charged. . . . The Court finds no indication in the

[objective] record that Petitioner had any intention of pleading guilty had he been satisfied with [defense counsel's] assistance.

Id. at 807-08 (citations omitted). Stated differently, the "ex poste assertion" made in this case, "without more, is insufficient to meet [Petitioner's] burden under Strickland" to undermine confidence in the outcome. Id. at 808; see Mann v. United States, 66 F. Supp. 3d 728, 740-41 (E.D. Va. 2014) (indicating that the petitioner's "steadfast adherence to his not guilty plea . . . flatly contradicts his assertion that he would have accepted the government's first plea offer" had he received better representation); Berry v. United States, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (indicating that after-the-fact testimony regarding a desire to plead guilty, "without more" is insufficient to demonstrate the likelihood that a plea offer would have been accepted).

To be clear, this Court does not find that after-the-fact testimony, if credible, is categorically insufficient to demonstrate prejudice and/or the need for an evidentiary hearing. Rather, the Court finds that, based on the case-specific record, Petitioner's after-the-fact assertions that his plea decision would have been different, had he received better representation, are insufficient to undermine confidence in the outcome.

## 2. Performance

Based on the foregoing, the Court separately finds that Petitioner fails to demonstrate that he received constitutionally deficient representation. Counsel learned from early on in this case that Petitioner was adamant that he was not guilty of armed carjacking, and in light of Petitioner's plausible "theft defense," that counsel viewed as having a significant chance of succeeding at trial, there was no need for counsel to discuss the issue further with Petitioner or to seek to negotiate a plea deal that would likely have resulted in a similar total sentence to Petitioner's exposure if convicted at trial.[7] Having failed to demonstrate deficient performance or prejudice, Petitioner's first ground for relief is denied.

## B. Failure to Investigate

Petitioner next asserts that his trial counsel failed to perform a constitutionally adequate investigation by failing to investigate the phone records of the robbery victim and by failing to subpoena surveillance video from a McDonald's restaurant and/or the U.S. Marshal's Service. Petitioner asserts that: (1) the phone records would have proven that the

---

[7] To the extent that defense counsel should be deemed per se ineffective for failing to disclose the maximum statutory punishments and/or failing to attempt to negotiate a plea deal as purportedly directed by Petitioner, Petitioner still fails to demonstrate Strickland prejudice because there is not a reasonable probability that, but for his counsel's deficiencies, Petitioner would have pled guilty. To the contrary, even in hindsight, Petitioner's decision to proceed to trial was objectively reasonable.

21

victim of the robbery had prior contact with the Petitioner and co-defendant McGhee; (2) the McDonald's video would have established that, shortly before a "staged" robbery, all four of the conspirators, including the two persons intending to falsely act as victims, had a meal together, in public, at a location with numerous surveillance cameras; and (3) video and/or testimony from the U.S. Marshal's Service would have undercut co-conspirator Williams' testimony asserting that Petitioner and McGhee threatened Williams and/or discouraged Williams from cooperating with the Government. Having reviewed Petitioner's allegations and affidavit, the Court agrees with the Government that Petitioner's post-hoc self-serving accusations fail to warrant an evidentiary hearing, or § 2255 relief, as the purported missing evidence is insufficient to undermine confidence in the outcome and/or is facially incredible in light of the record in this case, which includes trial testimony and statements made in open Court at post-trial hearings.

## 1. Phone Records

Considering first the phone records, Petitioner offers no evidence beyond his self-serving statement that a review of the robbery victim's (Wilson's) phone records would reveal communications between Wilson and Petitioner and/or co-conspirator McGhee. More importantly, however, is the fact that there was credible testimony at trial establishing that

Williams, who was Wilson's co-worker, <u>often borrowed Wilson's</u> <u>cellphone</u> to make calls. ECF No. 105, at 29-30.[8] Accordingly, even assuming that Petitioner is correct that a review of Wilson's phone records would reveal one or more calls between Wilson's phone and Petitioner and/or McGhee in the weeks leading up to the robbery, such evidence would not undermine confidence in the outcome.

## 2. McDonald's Video

As to the McDonald's video, Petitioner's § 2255 motion again rests on the self-serving assertion that investigation into such evidence would have proved his innocence. However, there are numerous reasons why such assertion fails to warrant § 2255 relief or an evidentiary hearing. First, a review of the trial transcript reveals that the victim (Wilson), the co-conspirator who worked with Wilson and admitted his guilt (Williams), and the co-conspirator who contested his guilt at a joint trial with Petitioner (McGhee), all testified similarly at trial regarding the early morning hours on the day of the robbery. ECF No. 105, at 32; Trial Tr. 576-77, 797-99. Such testimony credibly established that: (1) the victim went to work, <u>alone</u>, very early in the morning; and (2) McGhee and Petitioner picked up Williams from his home and dropped him off

---

[8] This citation to the trial transcript is not presented in the standard format of Trial Tr. ___, because it appears that the page numbering on the transcript from this day of trial reverted to beginning with "page 1" rather than continuing with the multi-day consecutive pagination.

around the corner from his workplace.[9]  Id.  Critically, McGhee, who contested his guilt at trial on the same theory advanced by Petitioner, testified at trial that after Williams was dropped off, McGhee and Mitchell went to McDonald's to wait approximately 45 minutes for the two employed delivery drivers (Williams and Wilson) to load up the delivery truck and begin their work day of making appliance deliveries.  Trial Tr. 799. While Petitioner opted not to testify at trial and could conceivably have testified differently about the events on the morning of the robbery, he stated to the Court, from the witness stand during a Voir Dire by his attorney, that he was choosing not to testify because he thought "McGhee said everything that needed to be said as far as what happened."  Id. at 838.

Second, the McDonald's video was squarely addressed at a hearing shortly after Petitioner's trial, and when the Court inquired into its significance, Petitioner failed to even suggest that the victim was at McDonald's that morning (as he now claims).  Rather, Petitioner appeared to assert that the video would prove that Petitioner was at McDonald's rather than dropping off Mr. Williams for work.

---

[9]  The clear inference from the trial testimony is that the three conspirators knew that it would be unwise to drop Williams off directly in front of his workplace in a U-Haul truck that would be used to steal appliances just a short time later.  Similarly, it would belie logic for all four conspirators to meet the morning of the crime, near the scene of the incident, in a public restaurant with numerous surveillance cameras.

24

**THE COURT**: Okay. So hold on. McDonald's videotape from the morning of the crime?
**THE DEFENDANT**: Yes.
**THE COURT**: You asked Mr. Ellenson to subpoena that?
**THE DEFENDANT**: Yes. That information. Because at that time that's, that was <u>showing that I was at that location at the time</u>.
**THE COURT**: When did you ask him to do that?
**THE DEFENDANT**: This is before the trial even came into play, Your Honor.
**THE COURT**: Okay. And did you have any discussions with him about it? Whether he did or didn't, or whether he should have?
**THE DEFENDANT**: <u>No. We had no further discussions, we just further discussed as far as how different options will be exhausted as far as going to trial</u>.
**THE COURT**: Okay. So with respect to the McDonald's videotape, you felt that it would show that you were <u>at a McDonald's the morning of the crime and not at the scene of the crime</u>?
**THE DEFENDANT**: Not at the scene the crime. <u>The morning of where Travis Williams said he was dropped off by me and Mr. McGhee, I was actually at the McDonald's</u>.

Hearing Tr. 12-13, ECF No. 247 (emphasis added). Mr. Ellenson credibly testified in a consistent manner, explaining that it was his understanding that, based on cell-cite data that was provided to the defense during discovery, the McDonald's video would only corroborate the fact that McGhee and Petitioner were waiting at McDonald's for Williams and Wilson to load the delivery truck, and that in light of the records showing where Petitioner was located, and his "brief discussions" with Petitioner on this issue, the McDonald's video was never "a big deal." Hearing Tr. 38-39, ECF No. 247. In light of such record evidence, the Court finds that defense counsel performed a

sufficient investigation into this issue to conclude that there was no strategic benefit in pursuing the video.

Petitioner's new and facially incredible theory of the case, which conflicts with Williams', Wilson's and McGhee's sworn testimony, as well as Petitioner's prior explanation as to why he asked his lawyer to investigate the video, is based solely on his own self-serving assertion and fails to demonstrate either constitutionally deficient performance, or resulting prejudice. Cf. Padilla v. Kentucky, 559 U.S. 356, 371-72 (2010) (noting that "[s]urmounting Strickland's high bar is never an easy task," and that the Supreme Court has "no reason to doubt that lower courts—now quite experienced with applying Strickland—can effectively and efficiently use its framework to separate specious claims from those with substantial merit"). The Court therefore finds Petitioner's post-hoc claim regarding a public meeting of all four men to be specious and in clear conflict with the well-developed record of the case.

### 3. Courthouse Video/Testimony

Petitioner's allegations regarding ineffective assistance for failing to produce a video, and/or testimony, from the United States Marshal's Service that would have purportedly undermined Williams' testimony that Petitioner and McGhee threatened him at the courthouse, likewise fails to raise a

constitutional issue and/or warrant an evidentiary hearing. First, while the timeline of such request is unclear, Petitioner asserts in his § 2255 affidavit that he asked Mr. Ellenson to pursue such evidence but that "[a]s far as [Petitioner] know[s], Mr. Ellenson made no attempt to contact any marshals or obtain any such recordings." ECF No. 199-1, at 4. In actuality, the record reveals that Mr. Ellenson did contact the Marshal's Service subsequent to the trial, but prior to sentencing, and learned there was neither a retained video nor any U.S. Marshals with testimony that would confirm or refute any of Williams' allegations. Mar. 29, 2013 Hearing Tr. 13-14, ECF No. 248. Accordingly, Petitioner fails to demonstrate that defense counsel provided constitutionally deficient performance. Second, even assuming that counsel was deficient for failing to request the video and/or testimony at an earlier time, Petitioner's speculative and self-serving assertions regarding the benefit of such video fail to demonstrate Strickland prejudice. Notably, even assuming that a video existed, was obtained and presented at trial, and it did not document any obvious misconduct by the charged defendants, such video would not undermine confidence in the outcome of the trial as the absence of video proof and/or the absence of a Marshal's testimony that he or she witnessed the occurrence of misconduct would likely have been easily explained by the location of the

27

cameras and/or the briefness of the momentary contact alleged by Williams.[10] Furthermore, even if the jury had reason to doubt that the alleged contact was made, the strength of the co-corroborating testimony of Williams and Wilson at trial regarding the details of the carjacking far outweighed Williams' corollary evidence regarding events occurring while in the custody of the U.S. Marshal's Service. In other words, even if there was courthouse video or Marshal testimony available and indicating that no threat was visible or heard, the failure to present such evidence would not undermine confidence in the outcome of the trial in light of the fact that Wilson and Williams both similarly and credibly testified as to the details of the carjacking. For the above stated reasons, Petitioner's second claim is denied.

## C. Failure to Object to Jury Instructions

Petitioner next asserts that his trial counsel performed at a constitutionally deficient level because he failed to object to the jury instructions used at trial. Specifically, Petitioner asserts that the "aiding and abetting" instructions, when read in conjunction with the instructions for Count Four, the firearm count, improperly allowed the jury to convict

---

[10] It is unlikely that the covert passing of a note or a mimed threat from one charged criminal defendant to another would occur in direct view of a U.S. Marshal and/or in a manner that was easily captured on video – the entire success of such a covert action requires that it remain covert from federal authorities.

Petitioner of Count Four in the absence of the legally required proof that Petitioner had pre-crime knowledge that a co-conspirator would carry a firearm.

## 1. Performance

Having carefully reviewed the filings on such issue, the Court agrees with the Government that Petitioner fails to demonstrate constitutionally deficient performance. First, the jury instruction defining "aiding and abetting" was a proper instruction of the law, and it therefore required no objection from defense counsel. Second, to the extent that such instruction was legally improper when applied in the context of a firearm in furtherance charge, the state of the law at the time of Petitioner's trial reveals that counsel's failure to object was not constitutionally deficient, as the controlling case relied on by Petitioner to prove trial counsel's error was not decided until more than a year after Petitioner's trial. See Rosemond v. United States, 134 S. Ct. 1240 (2014).[11] Third, even if counsel should have recognized that federal case law that was in existence at the time of Petitioner's trial could have supported an objection, counsel was not constitutionally deficient because it is far from obvious that the instructions

---

[11] In Rosemond, the Supreme Court held that in order for an accomplice to be convicted under § 924(c), he or she must have advance knowledge that a firearm would be used; stated differently, the accomplice must have knowledge at a point when he can "do something with it—most notably, opt to walk away" from the armed crime. Rosemond, 134 S. Ct. at 1249-50.

given in this case violate such case law, or Rosemond, as the instruction provided to the jury included the requirement that the jury find "beyond a reasonable doubt" that Petitioner "acted with the intention of causing the crime charged to be committed" and that mere knowledge "that the crime is being committed" is insufficient; rather, the Government had the burden to prove that Petitioner "deliberately associated himself . . . with the crime" and "wanted the crime to be committed, not as a mere spectator." Trial Tr. 886-87; see Stevens v. United States, No. 1:10cr446, 2015 WL 13449677, at *2 (E.D. Va. Sept. 22, 2015) (concluding that while the relevant instructions did not explicitly state the requirement that the defendant had "advance knowledge" that a gun would be used, "the Court sufficiently communicated to the jury that, to convict [the defendant] of aiding and abetting a violation of § 924(c), the government would have to prove that [the defendant] 'knowingly and intentionally' associated himself with the crime, 'wanted the crime to be committed,' and was not a 'mere spectator'").

## 2. Prejudice

Alternatively, even assuming that counsel performed at a constitutionally deficient level, Petitioner fails to demonstrate Strickland prejudice for two reasons: (1) the facts of this case plainly support the factual finding that Petitioner had advance knowledge that a firearm would be used during the carjacking in

30

light of the multiple armed threats made to Williams in advance of the robbery in order to convince him to participate with the other two conspirators, as well as the nature of the crime – a pre-planned carjacking of an obviously physically capable victim who could defend himself against an unarmed robber; and (2) assuming that advance knowledge of the gun was not proven or provable, the Government also proceeded in this case on a theory of Pinkerton co-conspirator liability, and the trial evidence clearly supported such liability (particularly in light of the earlier-in-time brandishing of firearms and the fact that the underlying crime at issue was not a drug trafficking crime, but a carjacking). See United States v. Hare, 820 F.3d 93, 105 (4th Cir.), cert. denied, 137 S. Ct. 224 (2016) (finding that even if the aiding and abetting jury instruction was plainly erroneous in light of Rosemond, such error "did not affect Appellants' substantial rights" because the verdicts could also be "sustained under the Pinkerton theory of liability," and "the evidence amply demonstrates that it was reasonably foreseeable . . . that a co-conspirator would possess a firearm"). Petitioner's third ground for relief is therefore denied.

## D. Failure to Object to Restitution

Petitioner next asserts that his trial counsel provided constitutionally deficient representation by failing to advance a timely objection to the restitution imposed in this case.

Although restitution was addressed/challenged by defense counsel at the sentencing hearing, the Court ruled that such objection was waived as it was not timely advanced prior to sentencing.

## 1. Performance

First, Petitioner fails to demonstrate that trial counsel provided constitutionally deficient performance by focusing his objections on Guideline and statutory challenges rather than seeking to secure a credit against the modest joint and several restitution figure attributable to stolen appliances (approximately $5,500). Notably, during sentencing proceedings, defense counsel effectively challenged the erroneous finding in the Presentence Investigation Report ("PSR") that Petitioner was subject to a seven (7) year mandatory minimum on the firearm in furtherance count, thereby reducing Petitioner's ultimate term of imprisonment by two years. See ECF No. 122, 133. Additionally, defense counsel not only challenged all of the offense conduct contained in the PSR, but he challenged the Guideline role enhancement and obstruction of justice enhancement that resulted in a combined increase in Petitioner's recommended term of imprisonment of between six and eight years. While such objections were not successful, Petitioner fails to demonstrate that defense counsel provided constitutionally deficient performance by prioritizing the issues directly relevant to Petitioner's lengthy term of imprisonment and opting

32

not to challenge the restitution. See United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) (explaining that "[a]ttorneys can be selective and strategic without risking an ineffective assistance of counsel claim," that the exercise of professional judgment "often involves setting priorities," and that "it can be positively detrimental to a client's chances not to set priorities but rather to scattershot the case" by raising every possible objection). In reaching such conclusion, the Court notes not only the modest restitution awarded based on the stolen appliances, which was a joint and several obligation that was not challenged by the two attorneys representing the co-defendants in this case,[12] but more importantly, the speculative nature of Petitioner's current position that the appliances recovered after the crime must have been sold for some value.

## 2. Prejudice

Alternatively, the Court finds that Petitioner's conclusory allegations fail to demonstrate Strickland prejudice. While Petitioner presumes that some of the appliances at issue must have been sold, the information in Petitioner's PSR, information that has not been proven inaccurate, states to the contrary. See PSR ¶ 29, ECF No. 159 ("Although the appliances were

---

[12] McGhee's counsel filed a "position paper" on sentencing that objected to imposition of any restitution in light of the fact that Mr. McGhee proceeded to trial and disputed all of the "offense conduct," in his PSR. ECF No. 128, at 2. However, such filing expressly stated that Mr. McGhee "does not dispute the amount of restitution calculated by the probation officer." Id.

subsequently recovered, Sears will not consider putting them into their 'scratch and dent' department due to the time that they were outside in the elements.").

For the reasons stated above, each of Petitioner's timely filed claims alleging ineffective assistance that are set forth in his original § 2255 motion, which was filed with the assistance of counsel, are **DENIED** on the merits for failing to satisfy one, or both, prongs of the deferential Strickland standard.

## IV. DISCUSSION – UNTIMELY PRO SE SUPPLEMENTS

### A. Improper Filings

As set forth above, Petitioner's § 2255 motion was filed by retained counsel. Although retained habeas counsel was later informed by the Court that his ability to practice in the United States Court of Appeals for the Fourth Circuit did not authorize him to practice in the district courts within the Fourth Circuit, such issue was remedied, and Petitioner has at all times been represented by counsel in the instant habeas action. Accordingly, as argued by the Government, the Court finds that Petitioner's numerous and repetitive pro se filings are not properly before the Court because, as a represented party, Petitioner should only have been communicating with the Court through his counsel. See United States v. Pittman, 238 F.3d 417 (4th Cir. 2000) (unpublished table opinion) (denying the

defendant's request to submit a supplemental pro se brief, explaining that because the defendant "is represented by counsel he has no right to file such material"); United States v. Barnes, 358 F. App'x 412, 413 (4th Cir. 2009) (citing United States v. Vampire Nation, 451 F.3d 189, 206 n.17 (3d Cir. 2006) for the proposition that a "district court is within its authority to disregard pro se motions from a counseled party"); United States v. White, No. 7:08cr54, 2010 WL 1462180, at *2 (W.D. Va. Apr. 12, 2010) (surveying the law on this issue, and noting the "many, sensible reasons for disallowing pro se motions from represented parties," and finding "no reason for entertaining an exception to this widely accepted rule"); United States v. Gwiazdzinski, 141 F.3d 784, 787 (7th Cir. 1998) (declining to accept a pro se motion and brief submitted by a represented defendant, explaining that a defendant "does not have an affirmative right to submit a pro se brief when represented by counsel"). While it appears that this Court has discretion to consider such filings, the Court finds no case-specific reason to consider the numerous supplements and motions to supplement in this case, which seek to add sixteen additional grounds for relief to the four grounds that were timely advanced by Petitioner's retained counsel. Accordingly, the Court declines to consider any of the additional § 2255 claims raised in Petitioner's pro se filings.

## B. Untimely

Alternatively, even if the Court deemed the pro se submissions to be properly filed, the Court agrees with the Government that nearly every argument/claim advanced in such filings must be dismissed as untimely. First, as outlined above, each and every pro se submission was filed more than one-year after Petitioner's conviction and sentence became final, and with the exception of his claim pursuant to Johnson v. United States, 135 S. Ct. 2551 (2015), ECF No. 216, Petitioner fails to demonstrate that an alternative limitations provision applied, or even arguably applied, nor does he demonstrate that equitable tolling principles excuse his late filings.

Second, to the extent that Petitioner attempts to rely on the doctrine of "relation back" to excuse his late filings, nearly all of Petitioner's supplemental claims/arguments fail to satisfy the applicable legal test. As explained in detail by another judge of this Court:

Courts apply Rule 15 of the Federal Rules of Civil Procedure to motions to amend in a § 2255 case. United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Rule 15 allows for amendments to the § 2255 motion filed after the one-year statute of limitations, provided the amendment relates back to the original timely filed motion. A claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amended claim "does not relate back (and thereby escape [§ 2255's] one-year time limit) when it asserts a new ground for relief supported by facts that differ

in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). In this regard, it is not sufficient that the new claim simply "has the same form as the original claims," if the new claim "arises out of wholly different conduct." Pittman, 209 F.3d at 318. Thus, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) (citing Davenport v. United States, 217 F.3d 1341, 1346 (11th Cir. 2000); see also United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999)).

United States v. Tucker, No. 3:09cr298, 2015 WL 1649123, at \*9 (E.D. Va. Apr. 13, 2015).

Here, it appears that Petitioner has advanced sixteen supplemental claims,[13] and nearly all of such claims rely on assertions that differ in time and type from the original § 2255 motion. Notably, while many of the supplemental claims assert ineffective assistance, they assert a different type of misfeasance than that alleged in the timely filed § 2255 motion. The Court does, however, note a few exceptions where the supplemental claim re-alleges and/or expands on a timely filed § 2255 claim; specifically, the following claims arguably "relate back": (1) the claim the Petitioner's firearm conviction is no longer valid, ECF No. 206/209; (2) the claim that trial counsel failed to adequately challenge restitution at

---

[13] Petitioner's numerous supplemental claims are effectively summarized by the Government in ECF No. 244, at 2-4.

sentencing, ECF No. 206/209; (3) the portion of a supplemental claim alleging trial counsel's failure to investigate evidence allegedly possessed by the U.S. Marshal's Service, ECF No. 233/236; and (4) the claim that trial counsel failed to investigate evidence associated with a meeting at McDonald's on the morning of the robbery, ECF No. 239. As to these four claims, while they remain procedurally improper as they were submitted pro se, to the extent that this Court is required to consider their substance, the Court has considered Petitioner's supplemental/expanded arguments and finds that they fail to advance a valid claim for § 2255 relief for the same reasons that the claims set forth in the original § 2255 motion fail.[14] These supplemental claims are therefore alternatively denied on the merits.

Third, with respect to the timeliness of Petitioner's claim advanced pursuant to Johnson v. United States, see ECF No. 216, a claim that was potentially subject to a different

---

[14] To the extent Petitioner's expanded restitution argument contends that restitution should be reduced by any amount paid by an insurance company, 18 U.S.C. § 3664(i) states as follows: "If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation"). Additionally, while one of Petitioner's supplemental filings asserts that his § 2255 affidavit is corroborated by the testimony of co-defendant McGhee with respect to the McDonald's video, ECF No. 239, at 4, as previously discussed herein, McGhee testified at trial, on direct examination, that McGhee and Mitchell went to McDonald's after they dropped Williams off near his work so that they could wait for the appliance delivery truck to leave the warehouse. Trial Tr. 798-99. He never testified that he and Mitchell went there before dropping Williams off, nor did he ever suggest that the victim was present at McDonald's.

limitations period because Welch v. United States, 136 S. Ct. 1257 (2016) made Johnson's holding retroactive to cases on collateral review, the Government advances a strong argument that such claim remains untimely because Petitioner seeks to extend the holdings of Johnson/Welch beyond the "Armed Career Criminal Act" to a new context, a § 924(c) firearm in furtherance conviction. However, even assuming that such claim was timely, the claim nevertheless fails on the merits because, contrary to Petitioner's argument, a federal carjacking conviction under 18 U.S.C. § 2119 "is categorically a crime of violence under the force clause of Section 924(c)(3)." United States v. Evans, 848 F.3d 242, 247-48 (4th Cir.), cert. denied, 137 S. Ct. 2253 (2017).

In summary, for the reasons set forth above, the Court dismisses the entirety of Petitioner's pro se filings as procedurally improper. Alternatively, the Court finds that nearly all of the claims advanced in the pro se filings are untimely as they were filed more than a year after Petitioner's conviction and sentence became final. As to any claims that relate back, they are alternatively considered on the merits and **DENIED** on the merits.[15]

---

[15] The Court further notes that many of Petitioner's pro se claims lack merit upon cursory review, to include claims that are procedurally defaulted as they advance previously unraised claims other than ineffective assistance of counsel. Other claims facially lack legal merit, such as Petitioner's claim that the special verdict form for the

39

## V. CONCLUSION

For the forgoing reasons, Petitioner's § 2255 motion is **DISMISSED** and **DENIED**. ECF No. 198. All of Petitioner's pro se supplements, and motions to amend/supplement, are **DISMISSED** and/or **DENIED** as they are procedurally improper, advance untimely claims, and to the extent any claims relate back or are otherwise timely, fail to warrant § 2255 relief. The Clerk is therefore **INSTRUCTED** to terminate pending motions ECF Nos. 236 and 239. Petitioner's associated "Motion for Bail Pending Resolution" of his § 2255 motion is **DISMISSED as MOOT,** and is alternatively denied on the merits. ECF No. 238.

Finding that the procedural basis for dismissal of Petitioner's § 2255 motion is not debatable, and alternatively finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c)(2); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

---

firearm in furtherance count was deficient for failing to include the language "beyond a reasonable doubt." Notably, the jury was instructed that the Government's burden was beyond a reasonable doubt. Moreover, the jury opted not to elect a statutory enhancement on Count Four, instead selecting the option on the special verdict form resulting in the lowest mandatory sentence under the statute, which is the same punishment that would have applied if no special findings were made by the jury. ECF No. 90. Other claims are simply belied by the record, such as Petitioner's claim that he was pressured into opting not to testify at trial. See Trial Tr. 836-39.

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must do so **within sixty (60) days** from the date of this Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, to Petitioner's habeas counsel, and to the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 5, 2017

41